The STATE of Ohio, Appellee,

v.

WEISS, Appellant.*

[Cite as State v. Weiss (1994), 96 Ohio App.3d 379.]

Court of Appeals of Ohio,
Guernsey County.

No. 93–CA–24.

Decided Aug. 8, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1421, 642 N.E.2d 386.

*C. Keith Plummer*, Guernsey County Prosecuting Attorney, and *Daniel G. Padden*, Assistant Prosecuting Attorney, for appellee.

*William R. Cromley*, for appellant.

GWIN, Presiding Judge.

Defendant, Alan J. Weiss ("appellant"), appeals from the judgment of conviction and sentence entered upon his no contest plea to one count of gross sexual imposition, a fourth degree felony under R.C. 2907.05(A)(2). Appellant assigns as error:

*"Assignment of Error No. 1*

"The trial court erred as a matter of law in its interpretation and application of the case of *State of Ohio v. Hensley* (1991), 59 Ohio St.3d [136] [571 N.E.2d 711], to the facts of the instant case.

*"Assignment of Error No. 2*

"The trial court erred as a matter of law in finding that the legislature had not distinguished between sex crimes against those under 15 and those over 15 years of age.

*"Assignment of Error No. 3*

"The trial court erred as a matter of law and in violation of defendant's constitutional rights of due process, equal protection and speedy trial in concluding that no undue prejudice to defendant was shown by virtue of the destruction of his bank records.

*"Assignment of Error No. 4*

"The trial court's finding that the victim was inhibited and had internalized was against the manifest weight of the evidence and contrary of law."

On April 13, 1993, a two-count indictment charged appellant, a former Cambridge Junior High School teacher, with the sexual battery of Aaron Nicholas and Marty Kiggans, violations of R.C. 2907.03. Count one of the indictment alleged that on a date certain in September 1982, appellant engaged in sexual conduct with Aaron Nicholas, knowing that Nicholas' ability to apprise the nature or control of his conduct was substantially impaired. Count two of the indictment alleged that on a date certain in September 1981, appellant engaged in sexual conduct with Marty Kiggans, knowing that Kiggans' ability to understand the nature or control of this conduct was substantially impaired.

An evidentiary hearing was held on appellant's motion to dismiss the indictment and the following facts were established. In the fall of 1982, the exact date being unknown, Aaron Nicholas, a fifteen-year-old Cambridge High School student, consumed alcohol purchased by appellant. At appellant's suggestion, Aaron Nicholas unfastened his pants and appellant performed fellatio on him. Nicholas, now twenty-seven years of age, did not report the incident to a "responsible adult" as contained in R.C. 2151.421 until September 1992. Although Nicholas knew at the time the incident occurred that it was "emotionally and morally wrong," he did not realize it was a crime. Nicholas testified that he did not report the incident until September 1992, because:

"I just, that was just, you know, back then, I mean, you know, you know, child molesting or whatever you want to call it, you know, it really wasn't spoke of. You know. It was a small community. Nobody, you know, that didn't happen in the small community.

" * * *

"No way, people would have looked at you differently, you know, and you would have been labeled and it's hard enough, you know, trying to get people to like you and, you know, you're always trying to, you know, impress your peers and be accepted by your peers."

Appellant admitted that he had oral sex with Nicholas at the time in question, but denied alcohol was involved and testified that the sexual conduct was initiated at Nicholas' suggestion.

On September 1981, the exact date again being unknown, Marty Kiggans, who had just turned seventeen years of age, consumed a large amount of alcohol purchased by appellant. After "passing out on the couch" in appellant's apartment, Kiggans awoke and found appellant performing fellatio on him. Kiggans struck appellant with his fist and immediately left the apartment. Kiggans did not report the incident to a "responsible adult" as contained in R.C. 2151.421 until September 1992, because he feared his friends would think he was "dirty" or "gay." Again, appellant admitted the incident but testified that it occurred at Kiggans' suggestion and appellant paid him $40 for the sex act. Appellant further testified that no alcohol was involved in that incident. The trial court noted that appellant believed the victims came forward and finally reported the crimes "because they had seen his picture in the local newspaper when he had been approved to be a foster parent."

After the trial court overruled appellant's motion to dismiss, a negotiated plea agreement was fashioned whereby the state amended count two of the indictment to the offense of gross sexual imposition and appellant pled no contest to it. Count one of the indictment involving Aaron Nicholas was *nolle prosequi*.

## I and II

Through his first two assignments, appellant maintains the trial court erred in failing to dismiss the charges against him for the state's failure to bring them within the six-year statute of limitations, pursuant to R.C. 2901.13(A)(1). We agree.

In overruling the motion to dismiss, the trial court found the six-year statute of limitations was tolled until the victims reported the crimes to one of the number of responsible adults who are under a legal duty to immediately report any known or suspected child abuse or neglect to certain governmental agencies pursuant to R.C. 2151.421. The court rendered its decision based upon the law set forth in *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711, syllabus:

"For purposes of R.C. 2901.13(F), the *corpus delicti* of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act."

Appellant asserts that *Hensley* does not apply to the facts of this case. In *Hensley* the child victims were all under the tender age of thirteen. However, in this case the child victims were not of tender age but were fifteen and seventeen years of age. Appellant buttresses his argument by citing numerous statutes in which the Ohio legislature has distinguished a different age bracket for those in need of protection from consensual sex. Appellant directs us to the criminal statutes involving criminal child enticement, statutory rape, gross sexual imposition, sexual imposition, corruption of a minor, and importuning, wherein the legislature chose to offer protection only to those children under thirteen years of age and, in some instances, those under sixteen.

In *Hensley, supra*, 59 Ohio St.3d at 138–139, 571 N.E.2d at 714, the unanimous Supreme Court explained its decision as follows:

"Initially, it should be noted that we are dealing with the sexual abuse of children. Statutes and case law in Ohio, as well as the rest of the country, seek to protect and ensure the safety of children of tender age. It is common knowledge in child sex abuse cases that the victims often internalize the abuse, and in some instances blame themselves, or feel somehow that they have done something wrong. Moreover, the mental and emotional anguish that the victims suffer frequently inhibits their ability to speak freely of the episodes of abuse. For these reasons, we reject the court of appeals' holding that because the children in the present case understood the wrongness of appellee's acts, the corpus delicti of the crime was discovered by them. While the record in this case suggests that the two children comprehended the inappropriateness of appellee's actions, it would pervert justice to impose on those whom the Criminal Code seeks to protect the responsibility to know the exact criminal nature of such conduct. In other words, even though a child of tender years may know that an act committed against him or her is wrong or even criminal, we are unwilling to impose the burden to contact the authorities on an already traumatized and susceptible child.

"* * *

"Our objective is to strike a proper balance between the need to place some restriction on the time period within which a criminal case may be brought, and the need to ensure that those who abuse children do not escape criminal responsibility for their actions. Toward this goal, we find that R.C. 2151.421 contains a list of responsible adults who are under a legal duty to immediately report any known or suspected child abuse or neglect to certain governmental agencies. These agencies, typically a county children services board, are responsible for investigating, in cooperation with law enforcement officials, any allegations of abuse or neglect."

■ While it is true *Hensley* involved "children of tender years," we believe the reasoning contained therein to be applicable to cases where the victim is less than eighteen years of age. It is not hard to imagine that seventeen year olds who have been sexually abused by an adult would internalize the abuse, blame themselves and/or feel they were the wrongdoers. As testified to in this case, peer ridicule, embarrassment, and the desire not to be labeled "dirty" or "gay" can cause a child sexual abuse victim to remain silent on the subject. Whether such "internalization" is sufficient to toll the statute of limitations in any given case involving the abuse of a child under eighteen years of age is best left to the trier of fact. It is the trier of fact who can determine from the credibility of witnesses whether their delay in reporting a sex abuse crime was justified under the circumstances of each case. Here, the court specifically concluded that "[b]oth victims testified that they did not know the act committed on them by [appellant] was a crime, that they internalized the matter and did not tell a 'responsible adult' until 1992. This testimony was unrefuted by [appellant] and was persuasive to this Judge who observed their demeanor on the witness stand."

■ In *State v. Hughes* (1994), 92 Ohio App.3d 26, 633 N.E.2d 1217, the Court of Appeals for Brown County relied upon the reasoning of *State v. Pfouts* (C.P.1992), 62 Ohio Misc.2d 587, 589–590, 609 N.E.2d 249, 251, wherein the court found that a child-abuse victim is "presumed to have understood and acknowledged the act and the criminal nature of the act upon attaining the age of majority; and, absent a showing to the contrary rebutting such presumption, the tolling of the statute of limitations with regard to that act ceased upon the child-victim's attaining the age of eighteen years." We decline to adopt such a presumption where there is no legislative authority for it. Instead, we believe it a better rule that once a child-abuse victim attains the age of eighteen and understands the criminal nature of the act, the statute of limitations begins to run. This rule would better meet the Ohio Supreme Court's objective of striking a proper balance between the need to place some restriction on the time period within which a criminal case may be brought and the need to ensure that those who abuse children do not escape criminal responsibility for their actions. *Hensley, supra*, 59 Ohio St.3d at 141, 571 N.E.2d at 716.

■ With this rule in mind, we must examine the trial court's conclusions of law to determine whether it properly flows from its findings of fact. Here, the trial court specifically concluded that Marty Kiggans, the seventeen-year-old victim, did not know the act committed by appellant was a crime. This conclusion of law is not supported by the court's finding of fact that Marty Kiggans "knew it was wrong for a person to take advantage of someone else under the laws of Ohio." Accordingly, the statute of limitations in this case began to run once Marty Kiggans obtained the age of eighteen and understood the criminal nature

of the act perpetrated against him. Although it is debatable whether Kiggans was aware of the exact nature of the crime, it is sufficient in our view that he knew appellant had committed a crime against him.

For these reasons, we find the trial court erred in failing to dismiss the charges against appellant for the state's failure to bring them within the six-year statute of limitations, pursuant to R.C. 2901.13(A)(1).

### III

■ Through his third assignment, appellant maintains the delay in bringing the charges against him violated his constitutional rights to due process, equal protection, and speedy trial. Appellant asserts the passage of time prejudiced his defense and violated the aforementioned constitutional provisions because certain bank records were either destroyed or disposed of. Specifically, appellant argued that a cancelled check for $350 paid to Marty Kiggans and an automatic teller machine receipt for $40 would have corroborated his claim that he paid Marty Kiggans for the sexual acts.

In disposing of this argument, the trial court ruled:

"The Court concludes as a matter of law that the Defendant's arguments that his constitutional due process, equal protection and speedy trial rights have been violated must be tested on an objective standard by the Trial Court. The Defendant cites no case law in support of his arguments on this point. The Court finds no undue prejudice shown to the Defendant from the factual presentation in this case. The Defendant's automatic teller and bank records have been destroyed and are unavailable to him.

"However, all that such records would show would be a $40.00 cash withdrawal in the evening hours and a canceled check for $350.00 for payment of a utility bill. These records would not show to whom the $40.00 was given nor why the $350.00 check was written. The Defendant can so testify or can ask the victims on cross-examination about the payment of cash for oral sex. As to the alleged payment by the Defendant of $350.00 for utility bill for Kiggans, the Defendant's check would only establish that the bill was paid. This bill, according to the testimony, was paid some time after the act charged in Court [*sic*] II of the indictment is alleged to have occurred and would have no relevancy to the elements of the crime charged."

We agree with the trial court's analysis of this issue and overrule this third assigned error.

## IV

Through his fourth and final assignment, appellant maintains the trial court's finding that Kiggans internalized the abuse suffered at the hands of appellant was against the manifest weight of the evidence and contrary to law. We disagree.

As we observed under the first two assignments of error, evidence was presented that would support the trial court's finding that Marty Kiggans did internalize the sexual abuse. As a reviewing court, we are not in a position to weigh the evidence. Instead, we must examine the record and determine whether there is some competent and credible evidence to support the trial court's finding.

Accordingly, we overrule appellant's fourth and final assignment of error.

For the reasons stated above, the judgment of conviction and sentence entered in the Guernsey County Court of Common Pleas, Ohio, is reversed and the charges against appellant are dismissed pursuant to App.R. 12(B).

*Judgment reversed.*

WILLIAM B. HOFFMAN and READER, JJ., concur.