OPINION
Defendant Bard Huntsman appeals a judgment of the Court of Common Pleas of Stark County, Ohio, convicting and sentencing him for one count of gross sexual imposition in violation of R.C.2907.05, and five counts of disseminating material harmful to juveniles in violation of R.C. 2907.31, after a jury found him guilty of those charges. The gross sexual imposition and four counts of disseminating material harmful to juveniles were committed prior to July 1, 1996, and the jury acquitted appellant of one count of rape in violation of R.C. 2907.02, two counts of sexually battery in violation of RC. 2907.03, and one count of corruption of a minor in violation of R.C. 2907.04. Appellant assigns eight errors to the trial court:
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE DEFENDANT'S MOTIONS TO SEVER THE COUNTS OF THE TWO INDICTMENTS AND TO CONDUCT SEPARATE TRIALS, AND THEREBY MATERIALLY PREJUDICED THE DEFENDANT.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRONEOUSLY DENIED THE DEFENDANT'S MOTIONS TO DISMISS COUNTS SIX AND SEVEN OF THE FIRST INDICTMENT, AND COUNTS ONE AND TWO OF THE SECOND INDICTMENT, BASED UPON THE APPLICABLE STATUTE OF LIMITATIONS.
ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRONEOUSLY ADMITTED INTERNET-DERIVED PHOTOGRAPHS WHICH WERE UNRELIABLE, INFLAMMATORY, AND, THEREFORE, UNFAIRLY PREJUDICIAL.
ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ERRONEOUSLY ADMITTED EVIDENCE OF THE DEFENDANT'S OTHER ACTS TO ESTABLISH THE FORBIDDEN PROPENSITY INFERENCE.
ASSIGNMENT OF ERROR NO. 5
 THE TRIAL COURT ERRED IN REFUSING TO DISMISS THE COUNTS IN THE INDICTMENTS CHARGING THE DEFENDANT WITH DISSEMINATING MATTER HARMFUL TO JUVENILES, IN VIOLATION OF R.C. 2907.31, WHERE THOSE COUNTS FAILED TO CHARGE THE DEFENDANT WITH A CRIME UNDER OHIO LAW.
ASSIGNMENT OF ERROR NO. 6
 THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION TO ACQUIT ON THE OBSCENITY-BASED CHARGES OF DISSEMINATING MATTER HARMFUL TO JUVENILES, WHEN THE STATE FAILED TO PROVIDE ANY EVIDENCE OF CONTEMPORARY COMMUNITY STANDARDS.
ASSIGNMENT OF ERROR NO. 7
 THE TRIAL COURT ERRONEOUSLY DENIED THE DEFENDANT'S MOTIONS TO ADMIT THE RESULTS OF TWO EXCULPATORY POLYGRAPH EXAMINATIONS.
ASSIGNMENT OF ERROR NO. 8
 THE TRIAL COURT'S SENTENCING ADDENDUM TO THE JUDGMENT ENTRY FROM WHICH THE DEFENDANT APPEALS UNCONSTITUTIONALLY DECLARES THE DEFENDANT TO BE A SEXUAL PREDATOR, IN VIOLATION OF THE OHIO AND U.S. CONSTITUTIONS' PROSCRIPTION AGAINST EX POST FACTO LAWS.
Appellant was a science teacher and basketball coach at Edison Junior High School in the Perry Local School District from January, 1983 until April 14, 1997. The State alleged while appellant was a school teacher, he entertained many of his students in his home, where he behaved inappropriately, permitting them to watch pornographic videos, indulge in alcohol, and fondling them. The State also presented evidence appellant went on various field trips and excursions with some of his students, and committed various abuses while on those trips. The State presented evidence appellant permitted students to access adult web sites on a computer in appellant's classroom.
Appellant took the stand in his own defense, and denied any inappropriate conduct, while admitting entertaining students at his residence.
 I
In the first assignment of error, appellant argues the court should have sustained his motion to sever the various counts of the indictment to three separate trials based upon the time frames of the charges. Appellant urged the court the charges could easily be severed into those charges dealing with the 1983-84 school year, the 1990-91 school year, and the 1996-97 school year. Our ruling on II, supra, disposes of the question of joining the charges from 1983-84. Remaining before us is the issue of severance of the charges stemming from 1990-1991 from those of 1996-1997.
Crim.R 8 permits joinder of offenses if they are of the same or similar character, are based upon the same transaction, or are part of a common scheme, plan, or course of criminal conduct.
Crim.R 14 permits otherwise properly joined offenses to be severed if the defendant demonstrates his rights are prejudiced by the order, State v. Schaim (1992), 65 Ohio St.3d 51. Motions to sever are directed to the sound discretion of the trial court,State v. Strobel (1988), 51 Ohio App.3d 31.
In reviewing a motion to sever, the court must determine whether evidence of other crimes would be admissible if the counts were severed, and, if not, whether evidence of each crime is simple and direct, Shaim at 58-59, citing State v Hamblin (1988),37 Ohio St.3d 153 at 158-159. The danger is always that the jury will convict the defendant based upon its perception the defendant has a propensity to commit criminal acts, rather than its determination the defendant committed the crime charged, Shaim at 59.
The State points us to State v. Schiebel, (1990), 55 Ohio St.3d 71, wherein the Supreme Court found the jury's acquittal on some counts demonstrated its ability to segregate the joined offenses, Schiebel at 88.
We find the offenses were properly joined, as part of a common scheme or plan, see State v. Lowe (1994),69 Ohio St.3d 527. The discrepancy in the time frame is not the per se reason to sever the offenses, see State v. Sexton (March 9, 1998), Stark App. # 1996CA00306 and 1996CA00367, unreported, wherein we permitted joinder of offenses tending to show a pattern of escalating abuse against several children.
The first assignment of error is overruled.
 II
R.C. 2901.13 provides for a six-year statute of limitations for felonies other than murder or aggravated murder. Counts one through seven of the first indictment, filed October 10, 1997, and count one of the second indictment, filed November 7, 1997, allege appellant disseminated matters obscene to juveniles and committed various sexual offenses in the time period from January 1, 1990 to August 31, 1991. Count two of the second indictment alleges appellant disseminated matters obscene to juveniles on September 1, 1983, to December 31, 1984. The State concedes four counts were brought more than six years after the criminal acts occurred, but advances two separate arguments: 1) the statute of limitations was tolled until the victim reached the age of majority, pursuant to R.C. 2901.13, and, 2) the statute of limitations was extended because appellant was a "public servant" whose criminal conduct constituted "misconduct in office" pursuant to R.C. 2901.13.
R.C. 2901.13(C) provides if a period of limitation has expired, the prosecution may still be commenced for an offense involving misconduct in office by a public servant, as long as the accused remains a public servant, or within two years thereafter.
The state cites us to State vs. Heebsh (1992), 85 Ohio App.3d 551, wherein the Court of Appeals for Seneca County found the accused, who was an elementary school teacher and high school tennis coach when he committed various sex offenses, was a public servant until he resigned in 1991. For this reason, the court found prosecution was timely within two years after he resigned from his position, even though the offenses allegedly occurred in 1981. The court found R.C. 2921.01 defines a "public servant" to include an employee or agent of the State of Ohio or any political subdivision, which includes the school district. The court also found inappropriate sexual contact with a student is misconduct in office by a public servant, because it is not behavior conforming to prevailing standards. The Seneca County Court of Appeals also found the accused used his status as a school teacher and tennis coach to facilitate sexual contact with the victim, a member of his tennis team. The court concluded R.C. 2901.13 permitted the prosecution to bring charges against appellant ten years after the alleged behavior occurred, Heebsh at 554-555.
Appellant cites us to State vs. Sakr (1995), 101 Ohio App.3d 334, where the Court of Appeals for Hamilton County found the prosecution could not bring charges in 1993 against a college professor who allegedly committed the crimes of attempted rape, gross sexual imposition, and kidnaping in 1986. The Hamilton County Court of Appeals found a professor at the University of Cincinnati is a public servant, but nevertheless, found the tolling provision of R.C. 2901.13 did not apply and the statute of limitation had run. The court held the professor's misconduct was related to the public office he held because the alleged victim was not only one of his students, but the professor was on her thesis committee, whose approval was necessary if the victim were to receive her master's degree. In fact, the allegation was the professor used his status as a member of thesis committee to try to coerce the victim into having sex with him the evening before the oral examination for her thesis. The court found, however, by employing the term "misconduct in office", the legislature intended for the statute of limitations to toll offenses which necessarily involve such a
 "palpable nexus between the auspices of the offices and the wrongdoing that it constitutes an offense against justice and public administration as codified in R.C. 2921 or alternatively, the wrongdoer misused his or her public office to effectively conceal the wrongdoing and thus thwart timely prosecution." Sakr at 337, emphasis sic.
The Hamilton County Court of Appeals found if courts do not construe the term "misconduct in office" narrowly, the limitations for all offenses committed by public servants could be tolled even if a particular offense had absolutely no relationship to the wrongdoer's official position. The court expressed doubt the legislature intended such a drastic result, conflicting as it does with the public policy underlying statutes of limitations, which is to discourage dilatory law enforcement, ensure criminal prosecutions are based upon fresh and trustworthy evidence, and avoid the unfairness of subjecting people to criminal liability indefinitely, Id, citations deleted. Finally, the Sakr court noted the tolling statute references R.C. 2921, which is entitled "Offences against Justice and Public Administration". These crimes include bribery, intimidation, perjury, compounding a crime, obstructing justice or official business, theft in office, and soliciting or receiving improper compensation. The Chapter addresses acts which tend to subvert the process of democratic government. Id.
The State also cites us to R.C. 2901.13(F), which provides the period of limitation shall not run during any time during which the corpus delicti remains undiscovered. In State v.Hensley (1991), 59 Ohio St.3d 136, the Ohio Supreme Court found the corpus delicti of a crime of child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of the act and the criminal nature of the act. This court has construed the holding in Hensley, to apply to child abuse prosecutions for crimes against children who have not yet obtained the age of eighteen, see State v. Weiss (1994),96 Ohio App.3d 379. Once the victim obtains the age of eighteen and is able to understand the criminal nature of the act, the statute of limitations begins to run. At the time of disclosure, here, four of the victims were over the age of eighteen, and one was twenty-eight years old at the time he disclosed appellant's allegedly criminal conduct to a "responsible adult." Appellant urges pursuant to Weiss, supra,
over six years had elapsed after Brian Daniska reached the age of majority, so R.C. 2901.13(F) does not toll the prosecution of the case concerning Brian until the State brought charges in 1997. Appellant concedes the three other victims fall within Weiss and Hensley, supra, but asserts the offense of disseminating material harmful to juveniles does not constitute either child abuse or neglect, and thus Hensley
does not apply. Appellant argues disseminating obscenity to a juvenile was part of the same course of conduct as the molestation, and was in fact part of the preparation process leading up to the molestation. Appellant urges it is unreasonable to separate portions of alleged course of conduct presenting obscene matters from the rest of the abusive conduct, and to apply separate rationales to each. The State replies the crime of disseminating matters harmful to juveniles is child abuse, and a fourth-degree felony if the victim is under thirteen years of age.
We find the charges relating to conduct in 1983 and 1984 should have been dismissed pursuant to the statute of limitations. Although we agree a school teacher is a public servant, we find where the facts alleged do not demonstrate the perpetrator used his position as a public servant to control the victim or otherwise conceal his actions, when the child turns eighteen, leaves the school in which the public servant is employed, or is no longer under the exploitative influences of the public servant, then the tolling ceases, and the statute of limitation must begin to run. We find this interpretation preserves the principles underlying the need for a statute of limitation without violating the legislature's scheme for tolling the statute when a public servant uses his position to commit or conceal misconduct in office.
We find the trial court should have dismissed the counts pertaining to Brian Daniska, which allegedly occurred in 1983 through 1984, being the second count of the second indictment. However, we agree the acts alleged were part of a course of conduct culminating in sexual abuse of a juvenile, and for this reason, following Hensley and Weiss, as well as Sakr, the trial court properly refused to dismiss the other counts.
The second assignment of error is sustained in part and reversed in part.
 III
In his third assignment of error, appellant argues the trial court erred in admitting ten pictures into evidence.
Appellant was accused of showing one of his students obscene internet pictures. The pictures the State presented to the jury were printed from Internet sites several months after the alleged offense. Appellant points out the State's witness who downloaded and printed these photographs was unable to identify the exact date he printed the photos, and also admitted web sites can and do change on a daily basis. Appellant argues the admission of these pictures violated Evid.R. 401 and 403, relevancy; Evid.R. 901, authentication; and Evid.R. 1002, the best evidence rule.
At trial, the State showed the alleged victim the photographs outside the presence of the jury. The State asked the witness to identify the material the witness actually recognized as the same ones appellant showed him on the Internet. The witness sorted the photographs he believed he had actually seen from the ones he had not. The victim was instructed to reject photos even if the were similar to the pictures he had seen. Thus, the State argues, the only pictures shown to the jury were ones identified as the actual photos appellant displayed to the victim.
We find the real issues here are foundational and best evidence.
If the only testimony the State had presented was that of the technician who had printed the exhibits, then the State could have had foundation problems. But here, the victim testified the pictures were identical to the ones he saw on appellant's computer.
In State v. Boyd (1972), 35 Ohio App.2d 147, the Court of Appeals for Allen county reviewed a conviction for exhibiting an obscene motion picture film to a minor. It appears the defendant showed a preview of a full-length movie to a theater containing under-aged persons. One of the arguments in Boyd, was the film that was introduced into evidence at trial was not the same film shown to the alleged victims. The court of appeals found the law does not require a particular film produced in court to prove the commission of the crime. The Allen County Court of Appeals asserted the important thing was not the identity of the physical film, but rather that the film introduced into evidence showed the identical things shown in the commission of the offense. Boyd at 266.
We find the foundation to introduce the evidence was sufficient, because it identified the photographs as derived from the Internet, and also identified them as identical to the photographs used to commit the offense.
Regarding the best evidence rule, Evid.R. 1003 permits a duplicate of the original unless there is a genuine question regarding the authenticity of the original, or, if, given the circumstances, it would be unfair to admit a duplicate.
This case is complicated by the fact the original material shown to this victim was necessarily a temporary image on a computer screen. The original images were impossible to present. We find the trial court did not err in insuring the photos shown to the jury were printouts of the exact images the State alleged appellant had used to commit the crime charge.
The third assignment of error is overruled.
 IV
In his next assignment of error, appellant urges the trial court improperly admitted evidence of other unrelated acts tending to establish appellant had a propensity to commit the offenses charged. The evidence of which appellant complains is evidence appellant played adult videos at his residence to other adults, and evidence appellant played a video tape of adult material to his eighth grade basketball team in 1985. The State argues this evidence was not presented to convince the jury appellant had a propensity to play obscene video tapes, but rather to prove appellant had what it characterizes as the "tools" to commit the offense of disseminating matter harmful to juveniles. The State points out appellant presented evidence he did not have a VCR at his residence in 1989 through 1990, and the State was entitled to present evidence that he in fact did have a VCR as well as adult videos in his possession. In addition, appellant presented character witnesses who testified appellant's character was inconsistent with the allegations. The State argues a character witness may be cross-examined as to the existence of reports of particular acts to test the credibility of the witness and the weight or the value the witness' testimony has. See State v.Elliott (1971), 25 Ohio St.2d 249.
We find the trial court properly admitted this evidence for the jury's consideration. The fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant argues the court should have dismissed the indictment counts which charged appellant with disseminating material harmful to juveniles in violation of R.C. 2907.31, because they failed to charge him with a crime as defined by Ohio law. Appellant argues the court improperly permitted the prosecutor to amend the language in the original indictment, which did not charge a crime, to a criminal offense quite different from the indictment.
R.C. 2907.31 prohibits a person from selling, delivering, furnishing, disseminating, providing, exhibiting, renting, or presenting to a juvenile any material or performance obscene or harmful to juveniles. The original indictment alleges the material of performance was "obscene to juveniles". Appellant argues the terms "harmful to juveniles" and "obscene" are defined by statute, but the phrase "obscene to juveniles" is not defined by statute.
The State cites us to Crim.R 7, which permits the court to strike surplusage from the indictment, and/or to amend the indictment at any time before, during, or even after the trial to conform to the evidence, provided no changes are made in the name or identity of the offense.
We find the court did not err in permitting the State to delete the language "to juveniles" from the phrase "obscene to juveniles", because the phrase "to juveniles" was surplusage. To find the phrase obscene to juveniles somehow intends to convey a notion different from mere obscenity is not well taken. That which is obscene in general must be obscene to juveniles, unless we find a juvenile somehow has a higher tolerance to obscenity than an adult.
In State v. O'Brien (1987), 30 Ohio St.3d 122, the Ohio Supreme Court set forth a two-part analysis to determine the propriety of an amendment to an indictment. First, we must decide whether the amendment changes the name or identity of the crime charged. We have already noted this amendment does not. Secondly, the court must determine whether there is any variation in the substance of the indictment, such that the defendant may be misled or prejudiced. Our review of the amendment leads us to conclude appellant was not misled or prejudiced by the amendment of this indictment. Further, we find the indictment, both in the original and as amended, was sufficient to put appellant on notice of the crime the State alleged. The State points out the Bill of Particulars listed the evidence to be presented, and the amendment had no effect on the type of evidence presented.
We find the original indictment charged appellant with a crime as defined in the Revised Code, and the amendment was appropriate.
The fifth assignment of error is overruled.
 VI
In his sixth assignment of error, appellant argues the trial court should have dismissed counts six, seven, nine and ten, which charged appellant with disseminating matter harmful to juveniles, because the State of Ohio failed to produce evidence of contemporary community standard. The State maintains the trial court appropriately ruled the jury was best equipped to determine the contemporary community standard, rather than inviting lay witnesses to give their opinions. In Miller v. California (1973),413 U.S. 15, the United States Supreme Court set forth a three-part analysis designed to determine whether the material was obscene and therefor unprotected by the First Amendment. The test involves determining: 1) Whether the average person, applying contemporary community standards, would find the work as taken as a whole appeals to the prurient interest, 2) Whether the work depicts or describes in a patently offense way, sexual conduct as specifically defined by the applicable state law, and 3) Whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value, Miller at 24.
Each of the alleged victims presented detailed testimony regarding the videos, magazines, and performances appellant provided them. The State did not present the actual videos, magazines, or performances to the jury, and they may not have been preserved. Nevertheless, the State asserts the victims were all adults at the time of the trial, and described the material sufficiently for the jury to determine whether the matters were obscene. The court did not permit the victims to offer their opinions of whether the materials were obscene.
In City of Urbana ex rel. Newlin v. Dowling (1989), 43 Ohio St.3d 109, the Ohio Supreme Court held expert testimony of community standards is not necessarily required, although the State concedes in Urbana the allegedly obscene materials were admitted into evidence for the jury to view for itself.
We find the testimony of lay or expert witnesses in the present case could not have provided any additional assistance to the jury, because the proposed witnesses would not have viewed the material at issue. We find the trial court did not err in permitting the jury to make the factual determination whether the material described by the alleged victims was obscene.
The sixth assignment of error is overruled.
 VII
In his seventh assignment of error, appellant argues the court should have admitted the results of two polygraph examinations which appellant urges were exculpatory.
Evidence of a polygraph examination is admissible only when both parties stipulate in writing to its admissibility, and the court in its sound discretion decides to accept such evidence, seeState v. Souel (1978), 53 Ohio St.2d 123. In the present case, appellant's private polygraph examiner administered the test, and, and the examiner's opinion is the test indicated no deception. However, there was no stipulation between the State of Ohio and the appellant as to the result of polygraph examination.
We find the trial court did not err in refusing to admit the results of the polygraph test. The seventh assignment of error is overruled.
 VIII
In his eighth assignment of error, appellant argues Ohio's Sexual Preditor Law is unconstitutional, in violation of the Ohio and the United States Constitutions proscription against ex postfacto laws. In State v. Cook (1989), ___ Ohio St.3d ___, the Ohio Supreme Court rejected this contention.
On the authority of Cook, supra, the eighth assignment of error is overruled.
Because we sustain the second assignment of error, we find we must vacate the entire conviction, and remand it to the trial court for re-trial. The trial court erroneously permitted the jury to hear evidence on counts six, and seven in the first indictment and counts one and two of the second indictment, in violation of the statute of limitations. The nature of the material admitted was so prejudicial we find the reliability of the convictions on the other counts is in question. Although we find no error in the trial of any of the other counts individually, this court is unprepared to say the convictions may stand in light of the vast amount of material improperly presented to the jury. For this reason, we find we must vacate the conviction on all counts.
For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is vacated, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
By Gwin, P.J., Reader, J., and Wise, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is vacated, and the cause is remanded to that court for further proceedings in accord with law. Costs to appellee.